### McCARTHY v. NORCROSS BROS. CO.

(Supreme Court, Appellate Division, First Department. November 15, 1907.)

1. Master and Servant—Actions—Negligence of Master.
     Negligence sufficient to charge an employer for injuries to his employé must be proved either by direct evidence or the proof of facts from which the inference of negligence can be legitimately drawn by the jury.

2. Same—Negligence of Master—Insufficiency of Evidence.
     In an action for personal injuries sustained by the falling of a stone which was hoisted at plaintiff's direction, evidence *held* insufficient to show negligence on the part of defendant or its superintendent.
     [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–968.]

Appeal from Trial Term.

Action for personal injuries by Patrick McCarthy against the Norcross Bros. Company. From a judgment for plaintiff; and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, SCOTT, and LAMBERT, JJ.

James J. Mahoney, for appellant.
M. L. Malevinsky, for respondent.

INGRAHAM, J. This action is brought to recover for the injuries sustained by the plaintiff in consequence of the alleged negligence of

the defendant or its superintendent. The plaintiff was in the employ of the defendant, and notice of the injury was given to the defendant under the employer's liability law (chapter 600, p. 1748, of the Laws of 1902). The plaintiff was employed by the defendant as a skilled laborer, and on January 15, 1904, was working at what was called a "rubbing bed." On that day one Caulfield, who was the defendant's superintendent, ordered him to cut down a stone about 4 feet square and 16 inches thick. This stone was to be used as part of a column, and after it was cut to the required thickness was to be rounded and fluted. Plaintiff testified that Caulfield put the stone alongside where he worked and told him he wanted to get it out. The stone was cut by putting it upon the "rubbing bed," and to facilitate its being moved holes were cut in the edge of the stone, in which dogs were inserted, and the stone then elevated by a derrick provided for that purpose. It would seem that it was customary to put these holes in the middle of two of the sides of the stone; but Caulfield told the plaintiff that, as the stone was so small, he could not put the holes in the middle of the sides, but would have to put them towards the corners. As the plaintiff explained it:

"I would have to put them in angleways from one corner to the other."

The plaintiff testified that he told Caulfield that he thought it would not be safe to do that; but Caulfield said they would have to do it that way, because the stone was too small. No further instructions seem to have been given. Plaintiff selected the points at which to drill the holes, and drilled them. The stone was then elevated upon the rubbing bed, and plaintiff worked it on the bed for about three-quarters of an hour, when he wished to see whether it was being cut straight. He inserted the dogs in the holes and had his helper lift it up from the rubbing bed with the derrick. After the stone was clear of the bed the plaintiff pushed it around until he got it in a proper position, and while examining the stone to see if it was level the stone fell, and plaintiff received the injuries for which he has recovered in this action.

The plaintiff testified that after the accident he saw that a piece of the stone was broken at the corner where the dog was inserted. Upon cross-examination he testified that this broken chip or piece of stone came out of it where the hole was; that by reason of the swaying of the stone after it was elevated it would not stand straight; that the direction in which the hole was bored into the stone would give the direction to the dogs, and that plaintiff bored these holes and bored them properly; that while he was at work on the stone he did not notice anything wrong about it; that he knew the holes were not safe when he bored them, but did not know that the safety of the stone depended upon the way the holes were bored to hold the dogs; that the holes were about three inches from the edge of the stone, and had to be put there to accommodate the size of the dogs in such a way that the dogs would catch. The only instruction from Caulfield was that the holes were not to be put in the center of the stone; that he would have to catch it near the corners, because the corners would come off when the stone was rounded. Another employé of defendant testified that he

saw the stone after the accident, and saw the piece of marble out over the hole. The plaintiff has recovered upon the theory that it was negligence for the superintendent to direct that these holes be placed anywhere except in the center between the corners.

It is not disputed but that the plaintiff was working on a stone where these holes for the dogs could not be placed in the middle of the sides of the stone without destroying it for the purpose for which it was to be used. This was explained to the plaintiff, and the only instruction he received was that he must place the holes in such a way that they would not interfere with the use to which the stone was to be put. Plaintiff said he knew it was not safe to bore the holes where he did, but he went on and did the work, put the dogs in the holes, and elevated the stone, pushing it around until he got it in the position that he wished. He noticed during this time that the stone was swaying and would not keep steady or stand straight; but, so far as appears, he did not examine the dogs after pushing the stone around to see that they were in place, and took no precautions to ascertain whether or not the dogs were in a proper position so that they could not slip out of the holes in the stone. I can find no evidence in the case that connects the accident with the location of the holes. Much of the testimony of the so-called expert was, I think, incompetent; but even that gave no explanation of why the stone over these holes should break when the hole was near the corner of the stone rather than in the center.

Nor do I think the jury were justified in finding that the accident was caused by the breaking of the stone, as it was quite as reasonable to suppose that, as the dogs slipped out, the stone was broken by the dogs catching on the end of the stone. Taking all this evidence together, it is quite impossible to say whether the stone broke away entirely from over the hole in which one of the dogs was placed, or for some reason, caused by the swaying of the stone or the pushing of the stone by the plaintiff, one of the dogs slipped out. But, accepting either of these reasons for the accident, I do not think it can be said that the accident resulted from any negligence of the defendant or its superintendent. To do this work, and prepare the stone for the purpose for which it was to be used, it was necessary that the holes should be placed towards the corners of the stone, and to accomplish that result the superintendent gave the directions to the plaintiff not to place the holes in a position that would injure the stone and render it useless for the purpose intended. There could be no negligence in this, for it was necessary for the proper preparation of the stone for use. The method by which this result was to be accomplished was left entirely to the plaintiff, and he selected the place for the holes, drilled them, and, when necessary, placed the dogs in them to elevate the stone. It was not a question of negligence as there was no evidence that any one was negligent. It was undoubtedly one of those accidents which was an incident of the work that was required to be done, and there is no evidence to show that any other method could have been used to prepare this stone for the purpose for which it was to be used, except the one that was directed to be adopted by the superintendent.

The evidence is undisputed that the stone was of a good quality, there was no indication that it would break, and if the accident was caused because of some weakness in the stone, which would be the most reasonable supposition, it was the plaintiff's fault in selecting the particular spots in which to bore the holes, and not the negligence of the superintendent. The negligence sufficient to charge an employer must be proved either by direct evidence or the proof of facts from which the inference of negligence can be legitimately drawn by the jury. It cannot be supported by mere conjecture or surmise, but must be made referable by the proof to some specific cause or defect. Dobbins v. Brown, 119 N. Y. 188, 193, 23 N. E. 537. I think the case fails to prove any negligence of either the defendant or its superintendent, and for that reason the judgment cannot be sustained.

The judgment and order must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.